# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | **Case No. 09-00174-TLM** |
| **DAVID VICTOR YOUNG and** ) | |
| **TAUNA MARIE YOUNG,** ) | |
| ) | **Chapter 11** |
| Debtors. ) | |
| _____ ) | |

## MEMORANDUM OF DECISION
_____

## BACKGROUND

David and Tauna Young ("Debtors") filed a voluntary chapter 11 petition on January 26, 2009, commencing this case. Doc. No. 1. They are debtors in possession[1] and filed on June 4, 2009, a proposed disclosure statement and plan of reorganization. Doc. No. 95, 96.[2]

On May 19, 2009, the Office of the United States Trustee ("UST") filed a motion seeking to dismiss the case. Doc. No. 73 ("Motion"). Opposed by Debtors, that Motion came on for hearing on June 8, 2009. Following the submission of evidence and argument, the Motion was taken under advisement.

The Court determines that the Motion shall be granted. This Decision

---

[1] *See* § 1101(1), § 1107. Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S. Code §§ 101-1532.

[2] Copies were also admitted at hearing on June 8, 2009, as Debtors' Exhibits A and B.

MEMORANDUM OF DECISION - 1

constitutes the Court's findings and conclusions. Fed. R. Bankr. P. 7052, 9014. A separate order of dismissal will be entered. Fed. R. Bankr. P. 9021.

**FACTS**

EquipRent, Inc., is an Idaho corporation incorporated in November, 2005. Debtors are and have always been the sole shareholders of EquipRent, Inc. This corporation rented tools and equipment to businesses and individuals, primarily in the construction trades.[3] Mr. Young, the primary manager of EquipRent, Inc., has bachelor's and master's degrees in business administration, and prior business experience in construction and some 18 years in the equipment rental business. Mrs. Young handles the books, with the help of an employee.

Despite Debtors' efforts, the economic conditions in 2007 and, especially, 2008, took a toll on EquipRent, Inc. It saw a sharp decrease in customers given the downturn in the commercial and residential construction markets. Many of EquipRent, Inc.'s accounts receivable became uncollectible when builders, contractors and landscapers failed or filed bankruptcy.

Debtors had guaranteed much of the corporate debt of EquipRent, Inc. In addition to the exposure to this debt, the corporate business was generating less income, impacting what Debtors could draw as compensation. Both the

---

[3] Testimony from Mr. Young indicated that prior to 2008 about 60% of the business was commercial and 40% consumer (individual homeowners). Since that time, the commercial side of the business has decreased, and the consumer side has increased.

MEMORANDUM OF DECISION - 2

corporation and Debtors were in financial straits.[4]

By the end of 2008, Debtors determined, with the assistance of counsel, that the best course of action would be to dissolve the corporation and file a personal chapter 11 bankruptcy.[5]

On December 30, 2008, articles of dissolution were filed with the Idaho Secretary of State for EquipRent, Inc. by Mr. Young as the corporation's president.[6] The same indicate that the dissolution was authorized and approved by shareholders on December 30 and would be effective on January 1, 2009.

Also on December 30, Mrs. Young signed and caused to be filed with the Secretary of State a Certificate of Assumed Business Name, indicating that she and her husband would be doing business under the name "EQUIPRENT." Mrs. Young signed the certificate as "owner." *See* Doc. No. 104 at 2.

Since that date, Debtors have used the assets of EquipRent, Inc. in their business operations. EquipRent, Inc.'s balance sheet as of December 31, 2008

---

[4] *See generally* Ex. 110 (EquipRent, Inc. 2007 tax returns); Ex. 111 (EquipRent, Inc. 2008 financial statements including profit and loss statements).

[5] Mr. Young's testimony at hearing established that Debtors' approach was a result of legal advice, and an "acknowledgment copy" of a certificate of assumed business name, discussed *infra*, was sent to the attorney representing them in the chapter 11 case. *See* Doc. No. 104.

[6] At the conclusion of the June 8 hearing, counsel agreed to supplement the record with a copy of the articles of dissolution, as well as a copy of the certificate of assumed business name, discussed *infra*. The Court caused these documents to be imaged and made part of the record at Doc. No. 104.

MEMORANDUM OF DECISION - 3

reflects that the corporation held accounts receivable ($51,293);[7] parts, supplies and fuel inventories ($11,791); rental equipment ($879,919); other equipment ($22,139); office furniture ($4,616); vehicles ($97,287); trailers ($125,482); computers and software ($38,987) and leasehold improvements ($28,540). *See* Ex. 111.[8]

As noted, Debtors filed their petition on January 26, 2009. Their initial schedule B (personal property) listed ownership of stock or interest in EquipRent, Inc., and ascribed a value of $0.00 to that asset. A number of other assets were listed:

> Accounts receivable – $21,917
> Vehicles and trailers – $109,054
> Office equipment and supplies – $3,010
> Fixtures, machinery, store equipment for business – $10,635
> Propane, diesel fuel, parts and supplies for sale – $7,881
> Rental equipment – $427,982
> Rental equipment (expensed) – $30,536

*See* Ex. 100 at 15, 16.[9]

Debtors do not deny these assets were the assets of EquipRent, Inc. But they argue, and Mr. Young testified he believed, that upon dissolution of the

---

[7] All figures shown in this Decision are rounded to the nearest dollar.

[8] These figures do not include accumulated depreciation of $271,046. Against the total assets of $1,016,334, the balance sheet shows total liabilities of $1,976,768, leaving a net corporate value of negative $960,434.

[9] On February 14, 2009, Debtors filed an amended schedule B. Ex. 101. The disclosed assets did not change, but in the amended schedule B, Debtors attached lists of assets that were referenced in the original schedule B, but not attached. *See* Exs. 100, 101.

MEMORANDUM OF DECISION - 4

corporation, the "assets revert to the shareholders."

While the foregoing are the critical facts for purposes of resolving the legal issues presented, the parties put on additional evidence at hearing. In summary, that evidence indicated: (1) EquipRent, Inc. incurred operating losses and amassed considerable debt; (2) most of the Debtors' debt was related to the EquipRent, Inc. business; (3) Debtors' post-filing operations showed a loss, however, the rental business is seasonal and the months of January through April or May (the only post-filing months for which reports are available) are traditionally the slowest of the year; (4) Debtors had undertaken efforts to diversify the rental line, and provide other services, including what might be called "consignment rental" of equipment owned by others, in an effort to boost business and income; and (5) Debtors had negotiated arrangements with virtually all secured creditors regarding adequate protection and use of collateral and cash collateral.

Finally, as noted above, the week before the June 8 hearing, Debtors proposed a plan of reorganization. *See* Ex. B. This plan placed all secured creditors in Class 2 (with each identified as a separate sub-class). Debtors separated the unsecured creditors of EquipRent, Inc. (Class 3) and the unsecured creditors of Debtors personally (Class 4).

The plan was to be implemented and payments made to creditors from the income derived from Debtors' operation of the equipment rental business. Secured creditors would be paid pursuant to a schedule. Class 3 creditors would receive

MEMORANDUM OF DECISION - 5

50% of net operating profit of the business "*prior* to dividends to shareholders."

*Id.* at 3.

Debtors are classified as equity security holders under the plan. They are to receive a regular (but as yet unspecified) salary monthly. And, at the end of each year:

> Debtors shall review the operations of the business and shall pay a dividend to themselves of the amount of profit which they believe is feasible. The US Trustee shall meet with Debtors to assure that the terms of the Plan are being met. The amount of such dividend, after income taxes, shall be used to pay those creditors in Class 3 [*sic*] as set forth herein.

*Id.* at 4. The Court assumes that the intended reference here is to Class 4, not Class 3, because Class 3 is expressly to be paid *prior* to dividends, and the treatment provided for Class 4 creditors states, "The creditors in this class shall receive 85% of the dividends, after reserve for income taxes, paid by the equipment rental business to Debtors until a maximum of $75,000 is paid toward creditors in this class." *Id.* at 3.[10]

---

[10] One final observation about the plan and business operations: A good deal of testimony and discussion occurred at hearing regarding the payment status of the lease of the premises where the business is conducted. There is no real property lease shown on schedule G. Ex. 100 at 31. Nor was there any amended schedule G filed. *Cf.* Exs. 101-103 (other amended schedules). However, the plan indicates that there is such a lease and that Debtors will assume it. Ex. B at 5. Critically, Debtors have not filed a motion to assume this nonresidential real property lease, nor have they sought an extension of time within which to assume it. Under § 365(d)(4), "an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of – (I) the date that is 120 days after the date of the order for relief; or (ii) the date of the entry of an order confirming a plan." The earlier of those dates arrived in late May.

MEMORANDUM OF DECISION - 6

**DISCUSSION AND DISPOSITION**

The UST seeks an order dismissing this case under § 1112(b), contending that "cause" exists. Section 1112(b)(1) provides (with certain exceptions not here relevant):

> [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

Under § 1112(b)(4), there is a nonexclusive list of "causes" for purposes of § 1112(b). *See In re Jayo*, 06.3 I.B.C.R. 71, 74, 2006 WL 2433451, at *5-6 (Bankr. D. Idaho 2006) (determining that the § 1112(b)(4) list is disjunctive and nonexclusive).

The UST contends that "cause" exists because Debtors: (1) used Code for an improper purpose; (2) misrepresented their assets and liabilities and hindered EquipRent, Inc. creditors; (3) suffered substantial and continuing loss, and are unlikely to rehabilitate; and (4) engaged in bad faith conduct.[11]

---

[11] In similar situations, the UST has argued that the debtors were attempting to improperly join a corporate bankruptcy reorganization case with their personal bankruptcy reorganization case. *See* § 302 (authorizing only one type of "joint case" – an individual and his or her spouse); *Fitzgerald v. Hudson (Matter of Clem)*, 29 B.R. 3, 4, 82 I.B.C.R. 205, 206 (Bankr. D. Idaho 1982); *see also Swartz v. Billingsley (In re Billingsley)*, 338 B.R. 372, 375 (Bankr. C.D. Ill. 2006) ("The Bankruptcy Code accords a corporation the status of a 'person' and treats it as a separate legal entity distinct from its shareholders."). The UST did not advance such an argument in the memorandum filed in support of the Motion, *see* Doc. Nos. 89, 90, but briefly raised it during the June 8 hearing on the Motion. The Court concludes that this argument is well taken,
(continued...)

MEMORANDUM OF DECISION - 7

The Court agrees cause exists to dismiss this case based on the scheduling and use of EquipRent, Inc.'s corporate assets by these Debtors in their personal reorganization case following the dissolution of that corporation. By reaching this conclusion, the Court need not address whether the losses incurred post-petition meet the § 1112(b)(4)(A) standard. In addition, the Court notes further that, even though the strategy employed by Debtors is flawed, there was inadequate proof that Debtors lacked good faith. *See, e.g., Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994) (the term "good faith" encompasses debtor's subjective intent as well as "several, distinct equitable limitations that courts have placed upon Chapter 11 filings"); *Idaho Dept. of Lands v. Arnold (In re Arnold)*, 806 F.2d 939, 939 (9th Cir. 1986) ("Good faith is lacking only when the debtor's actions are a clear abuse of the bankruptcy process.").

### A.    Property of the estate

Under § 541(a)(1), property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." While the determination of property of the estate is a matter of federal bankruptcy law, the extent of a debtor's interests in property is determined by applicable state law. *See, e.g., In re Fehrs*, 391 B.R. 53, 70, 08.3 I.B.C.R. 116, 122 (Bankr. D. Idaho 2008) (citing cases, including *Butner v. United States*, 440 U.S. 48, 55 (1979)).

---

[11] (...continued)
and provides an alternative basis for dismissing Debtors' case.

MEMORANDUM OF DECISION - 8

It is well accepted that a filing by an individual who is an owner of a corporation brings into the estate only his ownership interest and not the assets of the corporation.  *See, e.g.,* 2 *Collier on Bankruptcy* ¶ 101.30[3], at 101-139 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2009); *Wynne v. Streetman (In re Russell*, 121 B.R. 16, 17-18 (Bankr. W.D. Ark. 1990) (assets of corporation are not included in individual shareholder's bankruptcy estate); *Cadlerock Joint Venture II L.P. v. Robbins*, 2009 WL 151695, at *2 (W.D. Ky. Jan. 21, 2009) (same).

### B.     Corporate dissolution

A corporation is a legal entity recognized in the State of Idaho.  *See generally* Idaho Code § 30-1-101 through § 30-1-1704.  A corporation, properly incorporated and filed, can engage in any lawful business.  Idaho Code § 30-1-301.  It can, among other things, acquire and own real and personal property; sell or convey such property; pledge, mortgage or encumber such property; and make contracts and obligations and incur debts.  Idaho Code § 30-1-302.

Corporations sometimes fail.  The Idaho Code provides for dissolution of corporations in § 30-1-1401 through § 30-1-1440.  If the board of directors and shareholders properly decide to dissolve, *see* Idaho Code § 30-1-1402, then "[a]t any time after dissolution is authorized, the corporation may dissolve by delivering to the secretary of state for filing articles of dissolution[.]" Idaho Code § 30-1-

MEMORANDUM OF DECISION - 9

1403(1).

Under Idaho Code § 30-1-1403(2), "A corporation is dissolved on the effective date of its articles of dissolution." That is what occurred here on January 1, 2009.

Dissolution does not, however, terminate the corporate existence. Idaho Code § 30-1-1405(1); *Wait v. Leavell Cattle, Inc.*, 41 P.3d 220, 222 n.2 (Idaho 2002). Rather, as stated in Idaho Code § 30-1-1405, "A dissolved corporation *continues its corporate existence* but may not carry on any business except that appropriate to wind up and liquidate its business affairs, . . . ." (emphasis added).[12]

---

[12] In full, Idaho Code § 30-1-1405 provides:

**30-1-1405. Effect of dissolution.** – (1) A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including:

    (a)    Collecting its assets;
    (b)    Disposing of its properties that will not be distributed in kind to its shareholders;
    (c)    Discharging or making provision for discharging its liabilities;
    (d)    Distributing its remaining property among its shareholders according to their interests; and
    (e)    Doing every other act necessary to wind up and liquidate its business and affairs.

(2)    Dissolution of a corporation does not:

    (a)    Transfer title to the corporation's property;
    (b)    Prevent transfer of its shares or securities, although the authorization to dissolve may provide for closing the corporation's share transfer records;
    (c)    Subject its directors or officers to standards of conduct different from those prescribed in part 8 of this chapter;
    (d)    Change quorum or voting requirements for its board of directors or

(continued...)

MEMORANDUM OF DECISION - 10

The ABA Official Comment to § 30-1-1405 further explains:

> Section 1405(1) provides that *dissolution does not terminate the corporate existence* but simply requires the corporation thereafter to devote itself to winding up its affairs and liquidating its assets; after dissolution, the corporation may not carry on its business except as may be appropriate for winding-up.
>
> The Model Act uses the term "dissolution" in the specialized sense described above and not to describe the final step in the liquidation of the corporate business. This is made clear by section 1405(2), which provides that part 14 dissolution does not have any of the characteristics of common law dissolution, which treated corporate dissolution as analogous to the death of a natural person and abated lawsuits, vested equitable title to corporate property in the shareholders, imposed the fiduciary duty of trustees on directors who had custody of corporate assets, and revoked the authority of the registered agent. Section 1405(2) expressly reserves all of these common law attributes of dissolution and makes clear that the rights, powers, and duties of shareholders, the directors, and the registered agent are not affected by dissolution and that suits by or against the corporation are not affected in any way.

Idaho Code § 30-1-1405, ABA official cmt. (emphasis added).

The ABA comment to Idaho Code § 30-1-1403 reinforces the notion that dissolution is not the end of the corporation, but, rather, the beginning of the winding up process (or, put differently, the beginning of the end):

---

[12] (...continued)
         shareholders; change provisions for selection, resignation, or removal of its directors or officers or both; or change provisions for amending its bylaws;
(e)    Prevent commencement of a proceeding by or against the corporation in its corporate name;
(f)    Abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution; or
(g)    Terminate the authority of the registered agent of the corporation.

MEMORANDUM OF DECISION - 11

> The act of filing the articles of dissolution makes the decision to dissolve a matter of public record and establishes the time when the corporation must begin the process of winding up and cease carrying on its business except to the extent necessary for winding up.

Idaho Code § 30-1-1403, ABA official cmt.

Importantly, Idaho Code § 30-1-1405(2)(a) provides, explicitly, that "[d]issolution of a corporation does not: (a) Transfer title to the corporation's property[.]" Debtors' bankruptcy filings attempt to finesse the issue of whether they claim the EquipRent, Inc. assets as their own. On the one hand, they claim to be using those assets to "discharg[e] or make provision [to] discharg[e the corporation's] liabilities." *See* Idaho Code § 30-1-1405(1)(c). But at the same time, they list the assets on schedule B, and benefit from the automatic stay of § 362(a), which has prevented corporate creditors from seeking to enforce their claims against those assets. In fact, under the plan, Debtors seek to keep such creditors at bay and pay the claims over time through the aegis of chapter 11.[13]

The Idaho statutes contemplate that the assets of the dissolved corporation will be used to satisfy the claims of creditors. Section 30-1-1405(1) *prohibits* any business by the corporation (*i.e.*, "may not carry on") "except that appropriate to

---

[13] The Court rejects Debtors' contention that their bankruptcy and plan are proper vehicles by which they will "liquidate" or "discharge" the debts owed by the corporation. The Idaho Code's plain language does not contemplate a continuation of business as a means of paying (*i.e.*, liquidating or discharging) the debts. It requires a "winding up" and a "liquidation" of the business. *See* Idaho Code § 30-1-1405 (1) (dissolved corporation "may not carry on any business except that appropriate to wind up and liquidate its business and affairs"); s*ee generally* 19 C.J.S. *Corporations* § 958 ("When a corporation dissolves, its activities are limited to winding up, which is a process of settling the accounts and liquidating the assets of the corporation.")

MEMORANDUM OF DECISION - 12

wind up and *liquidate* its business and affairs." *Id.* (emphasis added). The dissolved corporation "collects" its assets, *id.* at (1)(a), and discharges its liabilities. *Id.* at (1)(c); *see also* Idaho Code § 30-1-1409. If there is value in such assets after all claims are satisfied, the remaining property may be distributed to shareholders. Idaho Code § 30-1-1405(1)(d).

The Court concludes that, stripped of Debtors' argumentative gloss, they have by and through this chapter 11 filing, taken the EquipRent, Inc. assets as their own, in contravention of the limits of Idaho law. The assets of EquipRent, Inc. may not be used to continue in *its* own equipment rental business, as that would violate the limitations of § 30-1-1405(1). Nor may they be transferred to, or become the assets of, Debtors to use in *their* non-corporate equipment rental business, as that is inconsistent with § 30-1-1405(2)(a), providing that dissolution does not transfer title to the corporation's property, and violates § 30-1-1409(1), which provides:

> Directors shall cause the dissolved corporation to discharge or make reasonable provision for the payment of claims and make distributions of assets to shareholders after payment or provision for claims.

Debtors' case, unfortunately, attempts too much. It seeks to reorganize their personal financial situation. But it also deals with the assets and liabilities of EquipRent, Inc. In doing so, Debtors violate the Idaho Code restrictions on how they, as shareholders and directors of the dissolved corporation, may handle those

MEMORANDUM OF DECISION - 13

assets. In sum, Debtors' individual bankruptcy estate does not include the assets of EquipRent, Inc.

### C. Delay in bringing motion

The Court appreciates the difficult posture of the matter.

First, even though the issue addressed above apparently caught the attention of the UST from the outset of the case, as testimony indicates it was discussed in the initial interviews and meetings, the UST's Motion was not brought for several months. That led to a substantial investment of effort and expense by Debtors, creditors and others, and perhaps a belief on the part of Debtors that the UST had concluded the approach taken was not objectionable. However, as regrettable as the delay might be, it does not excuse Debtors' handling of the corporate assets of EquipRent, Inc. in a manner not authorized by Idaho law.

Second, it appears Debtors have successfully negotiated at least preliminary agreements with secured creditors related to adequate protection and use of collateral and cash collateral. But even if the secured creditors decline to fight the issue of Debtors' improper dominion over and use of corporate assets, the Court is not at liberty to ignore it. The problem is squarely presented by the UST.[14]

---

[14] In cases such as this one, where there has been no committee of unsecured creditors appointed, the UST adds to its regular duties a prudential concern for those creditors who have no other organized voice. *See generally* 28 U.S.C. § 586(a)(3)(B), (G), (H); (a)(7), (a)(8).

MEMORANDUM OF DECISION - 14

**CONCLUSION**

The Court finds the UST's Motion well taken. Cause exists under § 1112(b)(1). Dismissal of the case is determined to be in the best interest of the creditors and the estate. An appropriate order will be entered.

DATED: July 23, 2009

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE